Perry J. Narancic (SBN 206820)
NARANCIC & KATZMAN, PC
325 Sharon Park Drive, #736
Menlo Park, CA 94025
www.nk-pc.com
Tel: 650-814-7688
Fax: 650-814-7688
Email: pnarancic@nk-pc.com

Attorneys for Plaintiff
SILICON ECONOMICS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SILICON ECONOMICS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>FINANCIAL ACCOUNTING FOUNDATION, and FINANCIAL ACCOUNTING STANDARDS BOARD<br><br>Defendants. | CASE NO. CV10-01939 JW HRL<br><br>**COMPLAINT**<br><br>(1) Declaratory Relief (CCP 1060)<br>(2) Monopolization (Sherman Act, § 1)<br>(3) Monopolization (Sherman Act, § 2)<br>(4) Unfair Competition (Cal. Bus. Prof. Code § 17200)<br><br>**JURY TRIAL DEMANDED** |

Silicon Economics, Inc.("SEI") for its complaint against the Financial Accounting Foundation and the Financial Accounting Standards Board (together, the "Defendants") alleges as follows:

### I. NATURE OF CASE

1. SEI is a Silicon Valley-based technology company that has developed and obtained United States patents on various accounting methods that significantly improve on existing accounting practices. Through the advocacy efforts of SEI's founder, Joel Jameson ("Jameson"), SEI has been trying to encourage the adoption of these innovations by private accounting firms, academic and financial institutions, governments and corporations. As part of

these efforts, SEI replied to an invitation for public comment from the Financial Accounting Standards Board ("FASB") in November 2006. SEI's response included discussions regarding one of SEI's inventions called "EarningsPower Accounting", which is now the subject of United States Patent 7,620,573 (the "SEI Invention"). However, FASB now claims that it owns, or has a royalty-free license, to the SEI Invention, including the U.S. Patent 7,620,573. This action alleges that no contract ever existed in which Plaintiff assigned any invention or patent rights to Defendants, and that Defendants violated federal antitrust laws and state unfair competition laws in wrongfully appropriating the SEI Invention.

## II. PARTIES

2. Joel Jameson ("Jameson") is an individual residing at Los Altos, CA, and he is the founder of SEI. Jameson is listed as the inventor of U.S. Patent 7,620,573 (the "SEI Patent").

3. Silicon Economics, Inc. is a California corporation with principal offices located at Los Altos, CA. It is also the assignee of the SEI Patent.

4. The Financial Accounting Foundation ("FAF") is a private, non-governmental, non-profit foundation within the meaning of Section 501(c)(3) of the Internal Revenue Code, which is based in Stamford, CT.

5. The Financial Accounting Standards Board ("FASB") is an unincorporated private body that establishes and publishes financial accounting standards that are used in the preparation of financial statements in the United States. It is based on Stamford, CT, and is governed by the FAF.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC §§ 1331, 1338(a) and (b). Pursuant to 28 USC § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims because those claims are so related to its federal claims that they form part of the same case or controversy and derive from a common set of operative facts.

7. This Court has personal jurisdiction over Defendants and venue is proper in the Northern District of California pursuant to 28 USC § 1391 (b) and (c), because a substantial part

of the events giving rise to these claims occurred in this judicial district.

## IV. INTRA-DISTRICT ASSIGNMENT

8. The San Jose Division of the Northern District of California is the appropriate division because a substantial part of the events giving rise to these claims occurred in Santa Clara County, where Plaintiff's principal place of business is located.

## V. FACTUAL ALLEGATIONS

### FASB and the Markets for Financial Accounting Methods and Standards

9. Clear, accurate accounting standards are fundamental to a sound economy because they govern financial disclosure and the preparation of financial statements – which, in turn, constitute the tools for actors to make economic decisions. Accounting standards govern what must be disclosed as part of financial statements, and how particular financial results must be presented.

10. Since 1973, FASB has been the principal organization in the private sector for establishing standards of financial accounting which govern the preparation of financial statements by public companies in the United States. FASB's published standards are officially recognized as authoritative by the United States Securities and Exchange Commission ("SEC"), and the American Institute of Certified Public Accountants ("AICPA"). Although the SEC has statutory authority to establish financial accounting and reporting standards for publicly held companies under the Securities and Exchange Act of 1934, the SEC, instead, relies on FASB for this function.

11. FASB has at least 90% of the market for establishing and decreeing financial accounting standards in the United States (the "Relevant Market"). The remainder of the Relevant Market is made up of individuals, academics, government bodies, corporations and accounting firms that articulate accounting standards, either by adapting FASB's issued rules, lobbying FASB directly, or lobbying the U.S. Congress, typically as a political coalition. The Relevant Market also includes the International Accounting Standards Board (IASB) based in London, U.K., which publishes a set of standards called the International Financial Reporting Standards (IFRS). Both the FASB and the IASB have been moving towards merging and

forming a single global standards setter.

12. The power and influence of these other market participants is very limited because FASB is the largest U.S. financial accounting standards setting organization and because, almost, only its pronouncements are enforced by the SEC.

13. Unlike other industry standards-setting organizations, such as the Internet Engineering Task Force ("IETF"), FASB's standards-setting is far removed from industry participants and accounting practitioners, resulting in low-quality standards that are often divorced from reality. The lack of FASB's innovation has given rise to discontent and the attempt by other market participants to introduce competing financial accounting standards, and even competing standards setting organizations:

> A government-backed monopoly must at least appear to be responsive to demands of various constituencies and thus adopt an elaborate due process method that slows down standard-setting. FASB has an elaborate due process model, and the appearance of engaging diverse constituencies but little actual participation from preparers, auditors and users of financial statements. We have lost the notion of "generally accepted" in accounting. The level of engagement of the engineering community in standard-setting that we document in the voluntary participation in IETF standards and groups, is inconceivable in accounting today.
>
> Competing private standard setters have incentives to be innovative and to carve out a clientele rather than trying to please all constituencies (see Jamal, Maier and Sunder, [2003] for an example in e-commerce privacy). Monopolies are seldom known to be innovative. Especially when backed by government they are slow in responding to changes in the environment due to extensive due process requirements. The data on standard-setting in the private sector suggests that FASB is too reticent, rather than too prolific in setting standards. This lack of responsiveness and timeliness is especially troubling in accounting where financial engineering industry creates transactions and structures to evade the substance of accounting standards.[1]

14. It is precisely because of FASB's lack of innovation that other participants in the Relevant Market, such as SEI, are trying to establish more effective accounting standards. Even though FASB is larger and has the support of the SEC, SEI is a direct competitor to FASB because SEI develops financial accounting standards that compete with those of FASB. As

---

[1] Jamal and Sunder, Monopoly or Competition: Standard Setting in the Private Sector (unpublished papers), available at http:/ssrn.com/abstract=1075705.

- 4 -

| Complaint | Silicon Economics, Inc. v Financial Accounting Foundation Case No. CV_____ |

discussed below, SEI's EarningsPower Accounting provides significantly more accurate financial statements than FASB's Fair-Value Accounting.

The Fundamental Financial Accounting Problem.

15. For decades, financial accounting has been plagued by a fundamental problem: a belief that either the balance sheet or the income statement can be accurate and useful, but not both. Underpinning this belief is a confusion and inability to handle asset and liability value trends and fluctuations, if not a failing even to identify the root cause of the fundamental problem.

16. FASB's position is that the balance sheet is paramount and should be made accurate and useful, with no mention of the adverse implications for the income statement. The choice of the balance sheet over the income statement is known as Fair-Value Accounting ("FVA").

17. The problem with FVA is that the net income measurement ceases to be a useful measurement of future recurring earnings, i.e. earnings power. This is because the net income measurement under FVA includes one-time windfall gains and losses. Thus, for instance, under FVA, if the market value of a bank's loan decreases by $10 million on Dec. 31, this loss is reflected in net income for that period, even though it cannot reasonably be expected to recur. Moreover, this approach fails to address the fact the loan has positive earnings power, which is the basis for the loan having any value in the first place. In this example, FVA is portrayed under FASB's ideal. In actual practice, some debt is handled under FVA, while other debt is not.

18. Many have complained about FVA and the resulting volatility of net income measurements. Just after the height of the recent economic crisis, the U.S. Congress pressured FASB to curtail FVA. Many have cited FVA as a significant contributor to the current economic crisis.[2]

---

[2] See e.g. Lord Turner, head of the British Financial Services Authority, the chief British financial regulator, with powers broader than the SEC: See *The Turner Review*, March 2009, published by the British Financial Services Authority. Specifically, "mark-to-market accounting helped fuel a self reinforcing cycle of irrational exuberance." (p. 53). Also:

SEI's Invention

19. The SEI Invention involves an equation derived from the present value equation of finance and credit/debit posting procedures to calculate instantaneous end-of-period asset and liability incomes and windfalls. These incomes, together with operating income, yield more accurate recurring net income measurements, since asset and liability value trends are included, while windfalls are excluded. In the case of the example of a bank's $10 million loss on its loan asset, there would be a windfall loss recorded in the current period, but not recorded as part of net income; the positive recurring income for the loan asset, however, is determined and included in net income. Accurate recurring net income measurement is foundational for the valuation of shareholder equity and making equity-investment decisions.

20. Besides improving the accuracy of net income measurement, the SEI Invention embraces mark-to-market accounting of asset and liability values, yielding accurate and current balance sheets. By improving net income measurement accuracy and embracing mark-to-market accounting, the SEI Invention resolves the fundamental problem and serves both sides in the current debate regarding the objects and methods of financial accounting.

FASB's Wrongful Conduct

21. On July 6, 2006, FASB issued an invitation for public comment, No. 1260 – 001: *Conceptual Framework For Financial Reporting: Objective Of Financial Reporting And Qualitative Characteristics Of Decision Useful Financial Reporting Information* (the "Concept Invitation", which is attached hereto as Exhibit A). The Concept Invitation presented FASB's

---

> While it is difficult to quantify the effect, it is a reasonable judgement that the application of fair value/mark-to-market accounting in trading books, played a significant role in driving the unsustainable upswing in credit security values in the years running up to 2007, and has exacerbated the downswing. (p.65)

In his January 21, 2010 speech, Lord Turner, states:

> Among bank prudential regulators and central banks there is a belief that existing bank accounting standards were among the factors contributing to the crisis, inducing procyclicality in credit provision and pricing.

Speech available at: www.fsa.gov.uk/Pages/Library/Communication/Speeches_____

- 6 -

1   thoughts concerning the most basic objects for financial reporting and how to accomplish such
2   objects.

3       22.   The Concept Invitation requested comments by November 3, 2006, and requested
4   that "responses from interested parties be received by e-mail to director@fasb.org  File reference
5   number 1260 -- 001." The Concept Invitation also stated, in relevant part, that "all comments
6   received by the FASB are considered public information. Those comments will be posted to the
7   FASB's website and will be included in the project's public record."

8       23.   SEI provided comments to the Concept Invitation by e-mail within the requested
9   time.  The comments included briefing on the SEI Invention. Following the submission of its
10  comments, SEI participated in a public FASB roundtable discussion concerning the Concept
11  Invitation.  Privately, SEI's founder also met with the FASB regarding the SEI Invention.

12      24.   In April, 2007, while surfing the FASB website, Jameson became aware of the
13  FASB website terms and conditions which provided, in relevant part, that FASB claimed rights
14  in any and all intellectual property sent to FASB by e-mail (the "FASB Website Terms"):

> Any information or material you transmit to the Site by filling in an on-line form, sending an e-mail (whether editorial or technical in nature), or other activity, including information such as personal data, comments and suggestions (whether in response to a specific query or otherwise) will be treated as non-confidential and non-proprietary except for information submitted in connection with a purchase through the FASB store which is submitted pursuant to the privacy policy displayed at the FASB store. <u>Unless we agree in writing in advance, anything you transmit, whether electronically or in hard copy may be used by the FAF/FASB and its affiliates for any purpose, including, but not limited to, reproduction, disclosure, transmission, publication, broadcast and posting. This means that the FAF/FASB may use the ideas, concepts, know-how or techniques you transmit to the Site</u>. We advise that you do not send us confidential or proprietary information unless that is your intent. [emphasis added]

http://web.archive.org/web/20021017070235/www.fasb.org/Terms&Conditions.shtml

25.   Jameson was not aware of the FASB Website Terms prior to April 2007.  They were not part of the Concept Invitation; nor where they referenced in any other dealings that Jameson or SEI had with FASB. But out of an abundance of caution, Jameson contacted FASB in order to obtain clarification and confirm that FASB did not claim any ownership interest (or

- 7 -

Complaint     Silicon Economics, Inc. v Financial Accounting Foundation
Case No. CV_____

any other kind of interest) in the SEI Invention. FASB failed to reply to Jameson, even though Jameson made it clear that he did not view the FASB Website Terms as applying to the SEI Invention.

26. In the fall of 2009, Jameson, through legal counsel, again contacted FASB in an effort to obtain final resolution of any dispute concerning FASB's alleged interest in the SEI Invention. However, FASB claimed that it had a royalty-free ownership interest in the SEI Invention (including the SEI Patent), and categorically refused to release any such interest.

### First Cause of Action
### (Declaratory Relief – Cal. Code of Civ. Proc. § 1060)

27. Plaintiff re-alleges the allegations set forth above as though set forth herein.

28. Defendants' only basis for claiming an interest in the SEI Invention arises out of the FASB Website Terms.

29. The FASB Website Terms did not, and could not, create a contract between FASB, Jameson or SEI because there was no notice of, or assent to, those terms by Jameson or SEI.

30. FASB claims some right, title or interest in the SEI Invention, pursuant to the FASB Website Terms, and this has caused an actual controversy with respect to ownership of the SEI Invention .

31. This actual controversy has caused uncertainly concerning Plaintiff's exclusive rights in the SEI Invention, which in turn present harm to the reputation and goodwill of SEI.

32. Plaintiff has no adequate and speedy remedy to resolve the parties' dispute other than by declaratory judgment from this court. Because there is dispute with respect to a contract that has caused immediate injury to Plaintiff, this action presents a real, substantial dispute capable of specific relief.

### Second Cause of Action
### (Monopolization – Sherman Act, §2)

33. Plaintiff re-alleges the allegations set forth above as though set forth herein.

34. The relevant market in this action is the market for establishing accounting standards in the United States.

35. There are other persons and bodies that consider or propose accounting standards, such as governments, financial institutions, corporations, trade groups, and academics – but FASB is the principal body sanctioned by the SEC for articulating and establishing accounting standards for public companies in the United States. Because FASB largely governs and dictates accounting standards, , it has market power in the Relevant Market.

36. In an effort to unlawfully maintain that market power, FASB has unlawfully claimed a proprietary interest in the SEI Invention through a bad faith assertion of the FASB Website Terms. The result of this unlawful conduct is to exclude the Plaintiff as a competitor in the market for establishing accounting standards in the United States.

37. As a result of this exclusionary conduct, competition in the Relevant Market has been lessened and Plaintiff has been harmed.

### Third Cause of Action
### (Agreement in Restraint of Trade– Sherman Act, §1)

38. Plaintiff re-alleges the allegations set forth above as though set forth herein.

39. If there was a valid contract made between SEI and FASB relating to the SEI Invention (which is denied), then there was an "agreement" for the purpose of satisfying that requirement under Sherman Act, § 1. This agreement has the purpose and effect of unduly lessening completion in the Relevant Market because it discourages Plaintiff and others from engaging in public comment. This, in turn, discourages innovation in the Relevant Market and entrenches the monopoly of FASB.

40. SEI has, or will, suffer injury as proximate cause of the FASB's unlawful conduct, including the actual or future use and enforcement of the FASB Website Terms.

### Fourth Cause of Action
### (Unfair Competition – Ca. Bus. Prof. Code § 17200)

41. Plaintiff re-alleges the allegations set forth above as though set forth herein.

42. The acts complained of above constitute unfair business practices.

NARANCIC & KATZMAN, PC
ATTORNEYS AT LAW

43. SEI has suffered injury as proximate cause of the FASB's unlawful conduct, including use and enforcement of the FASB Website Terms.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands that judgment be rendered in their favor as follows:

A. for preliminary and permanent injunction enjoining FASB from claiming or exercising any rights with respect to the SEI Invention or SEI Patent;

B. for a declaration that FASB has no ownership, license or any other interests in the SEI Invention;

44. for compensatory and general damages according to proof, and that such damages be trebled;

45. for punitive and exemplary damages according to proof;

46. for the cost of the proceedings herein and for Plaintiff's reasonable attorneys fees; and

47. for all such other and further relief as the court deems just.


DATED: May 5, 2010                    Respectfully submitted,

                                      NARANCIC & KATZMAN, P.C.


                                      By  /s/ Perry J. Narancic
                                            Perry J. Narancic


                                      Attorneys for Plaintiff
                                      SILICON ECONOMICS, INC.

NARANCIC & KATZMAN, PC
ATTORNEYS AT LAW

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on all issues so triable.

DATED: May 5, 2010                Respectfully submitted,

NARANCIC & KATZMAN, P.C.

By  /s/ Perry J. Narancic
        Perry J. Narancic

Attorneys for Plaintiff
SILICON ECONOMICS, INC.